IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS BLALOCK, | ) | CASE NO. 1:04CV2156 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE OLIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| JULIUS WILSON, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is Marcus Blalock's ("Blalock") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on October 28, 2004. Blalock is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. Blalock*, Case Nos. CR407194 & 407947 (Cuyahoga County 2001). For the reasons set forth below, the magistrate judge recommends that the petition be denied.

I

The May term of the Cuyahoga County grand jury indicted Blalock in case no. CR407194 on three counts of aggravated murder with felony murder and firearm specifications, kidnaping with a firearm specification, aggravated robbery with a firearm specification and three counts of having a weapon while under a disability. The same grand jury indicted Blalock in case no. 407947 on one count of tampering with evidence and one count of obstruction of justice. The court consolidated these cases for trial upon the state's

motion, deleted the felony murder specifications from the indictment, and reduced the first count of aggravated murder to murder.

A.    Trial

Blalock's trial began on August 31, 2001. The state appellate court reviewing Blalock's conviction and sentence described the following facts as relevant to Blalock's appeal:

> During the state's case at trial, the jury heard the testimony of co-defendant Arketa Willis, at whose house the murder occurred; forensic pathologist Eric Vey; the victim's sister, Kimberly Rose; his friends Lenor Lamar and Tawain Gordon; police dispatcher Vikki Milano; Dorothy and James Evans, who were the aunt and uncle of co-defendant Arketa Willis and lived next door to her; the Maple Heights police officers who responded to the scene on the night of the murder and investigated thereafter; Steven Wiechman, a forensic scientist who conducted DNA testing; Pennsylvania state troopers Marc Stevick and Jay McKee; Michael Walker, the owner of the Big Family Lounge, where Arketa Willis worked; Rita Hargrove, one of Willis's coworkers and friends; record keepers for Verizon Wireless and Sprint; and John Saraya, special agent for the Bureau of Criminal Investigation, who photographed the scene where the murder occurred. These witnesses disclosed the following facts:

> At approximately 8:00 a.m. on Saturday March 24, 2001, the badly burned body of Howard Rose was found in the back of a pickup truck which had itself been badly damaged by fire on the eastbound side of Interstate 90 just west of Exit 6 in Pennsylvania. Tire tracks indicated that another vehicle had been stopped behind the truck and proceeded east on Interstate 90. Some fabric, parts of a watch and a thin necklace and a cross were recovered from the bed of the truck. Forensic examination revealed that the cause of death was a single gunshot wound to the back of the head at point blank range.

> The truck was registered to a Lenor Lemar. Through this connection, the Pennsylvania State Police located and interviewed family and friends of the victim, Howard Rose.

> During the course of the investigation, the state police discovered that the Maple Heights Police had responded to an incident on the night of March 23 at the home of Arketa Willis. Willis's aunt and neighbor, Dorothy Evans, called police at approximately 11:20 p.m. to report suspicious activity at Willis's house, where there were two men parked in the driveway. Police responded. The car left the scene. Police pursued it and apprehended the two men inside--Dion Johnson ["Johnson"] and Ernest McCauley ["McCauley"]. McCauley had blood on his clothes. They were both

2

arrested.

Police entered the house and found coagulated blood and a pager with blood on it. Blood was also observed on the driveway.  The blood on the pager was later tested and found to be Rose's.

Willis was interviewed by the police on April 6.  At first, she told them that the blood on the driveway was from a dog fight, but she later abandoned that story and told the police that she saw the victim dead on her bed.  She also told them she was afraid of appellant and he was the one who killed Rose.  Police searched her home and found that the bedroom was freshly painted and had a new mattress and box spring; the driveway had been washed with bleach.

Willis was interviewed again on April 9 and told police that appellant took her car and took the body to Pennsylvania.  She retracted this statement later, and admitted that she was with appellant when they took the body to Pennsylvania.

Willis testified that she met Rose at Rose's grandfather's house on March 23. When she got there, she received a call from appellant asking her if she knew anyone who had drugs.  Willis turned the call over to Rose, who she knew to sell drugs.

Rose and Willis drove to Lorain.  They made several stops, then went to a restaurant for dinner.  She saw that Rose had a substantial amount of cash.

Rose took Willis home, where she bathed and dressed for work.  Rose told Willis that he had told appellant to meet him at Willis' house that night.  Appellant came to the house before Willis left.  Willis then went to work driving Rose's truck.

Willis expected Rose to come to get his truck at the Big Family Lounge where she worked.  When Rose didn't come, Willis tried to call appellant from work but got no answer.  After calling four or five times at various numbers, appellant finally answered. Willis asked where Rose was.  Appellant told her that he was busy and she should call back.  Approximately thirty minutes later, she called appellant again, and he told her he would call her back. Appellant called less than half an hour later, telling Willis to come home and bring the truck.

When Willis went home, she found a car parked in front of her house with two people inside.  One was Ernest McCauley, whom she knew.  All three of them entered the house together.  She saw Rose's body lying on her bed in blood.  Appellant told her that he had to "do" Rose.

Appellant and McCauley carried the body in blankets through the kitchen and out the side door to the truck.  With the help of the third person, Dion Johnson, they got

3

the body into the truck.  Ms. Willis drove the truck away as the police arrived.  She went to a gas station, where she called the Big Family and had a friend, Omar, come to pick her up and take her back to work.  She left the truck parked on a side street.

When Willis got off work, she went home, wiped blood off a doorway and poured water on the blood on the driveway.  She and Omar then went to the police station.  The police told her to go home, where she was met by police officers.  They asked her about the blood in the driveway, and she told them there was a dog fight.

Willis and Omar then went to appellant's house.  Willis had seen appellant and his girlfriend, Angie, on her way home from work.  Appellant put a gas can in the trunk of Willis's car and they drove to the truck.  Appellant drove the truck and she and Omar followed.

They traveled east on Interstate 90.  At a rest stop, appellant removed the gas can from Willis's car and took it with him in the truck.  Near daylight, appellant pulled the truck to the side of the road.  Willis pulled in behind him.  The truck burst into flames and appellant jumped out.  He got in Willis's car and they continued to drive east to New York City, where they stayed not more than four hours.  They drove back that evening but got lost, finally arriving in Cleveland around 8:00 a.m. on Sunday.

At the conclusion of the trial, the jury found appellant guilty of all charges.  The court found him guilty of possession of a weapon while under disability.

In Case No. 407194, the court sentenced appellant to a term of fifteen years to life imprisonment on the murder charge; life imprisonment with eligibility for parole in twenty years on each of the aggravated murder charges; ten years' imprisonment on each of the aggravated robbery and kidnaping charges; and twelve months imprisonment on the weapons charge.  All of these sentences were to be served concurrently with one another and consecutive to the mandatory three year sentence on the firearms specifications in each of the first five charges, which were merged for purposes of sentencing.

In Case No. 407947, the court sentenced appellant to concurrent terms of five years on the tampering with evidence and obstructing justice charges.  This sentence was to be served consecutive to the sentence in Case No. 407194.

*State of Ohio v. Blalock*, 2002 WL 2027520 (Ohio App. Sept. 5, 2002).


B.    *Direct appeal*

4

On October 26, 2001 Blalock, represented by counsel, filed a petition for delayed direct appeal from his conviction and sentence.  The state appellate court granted his petition on November 20, 2001.  Blalock asserted fourteen assignments of error in his direct appeal:

I.      DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT DISCLOSE THE TRANSCRIPT OF THE GRAND JURY TO DEFENSE COUNSEL

II.     DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT PERMITTED THE PROSECUTOR TO BOLSTER THE TESTIMONY OF ARKETA WILLIS AFTER SHE HAD BEEN CROSS-EXAMINED AND ADMITTED TO MAKING A NUMBER OF INCONSISTENT STATEMENTS

III.    DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS OF CONFRONTATION AND CROSS-EXAMINATION

IV.     DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE WHEN THE COURT WOULD NOT ALLOW EVIDENCE CONCERNING ARKETA WILLIS' ADMISSION TO SHOOTING HOWARD ROSE.

V.      DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF IMPROPER PROSECUTORIAL ARGUMENT

VI.     DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL AND IMPARTIAL JURY WHEN THE COURT DID NOT TAKE PROPER ACTION IN DETERMINING THE CAUSE OF DISTRESS BY A JUROR WHEN THE VERDICTS WERE ANNOUNCED IN OPEN COURT

VII.    DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT GIVE AN INSTRUCTION CONCERNING ALIBI

VIII.   DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT GIVE ANY INSTRUCTION CONCERNING THE WILLFUL LIES BY ARKETA WILLIS

IX.     DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE NO INSTRUCTION RESULTING IN AN IMPERMISSIBLE AND UNCONSTITUTIONAL PRESUMPTION

X.      DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED MOTIONS FOR JUDGMENTS OF ACQUITTAL

XI.    DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS
CHARGED UNDER A DUPLICITOUS AND MULTIPLICITOUS INDICTMENT AND
THERE WAS NO REQUIREMENT OF JURY UNANIMITY

XII.    DEFENDANT WAS SUBJECTED TO MULTIPLE PUNISHMENTS WHEN
DEFENDANT WAS SENTENCED ON ALL COUNTS OF THE INDICTMENT

XIII.    DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN
CONSECUTIVE SENTENCES WERE IMPOSED

XIV.    DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS
SENTENCED TO A FELONY SENTENCE FOR OBSTRUCTION OF JUSTICE

(Punctuation in original).  On September 30, 2002 the state appellate court affirmed Blalock's

conviction and sentencing for murder, aggravated murder, kidnaping, aggravated robbery,

and having a weapon while under disability.  The appellate court reversed Blalock's conviction

for obstruction of justice and found that the trial court had erred in making Blalock's sentence

for tampering with evidence consecutive to his other sentences.  The appellate court

remanded the case to the trial court for resentencing on the count of tampering with evidence.

Blalock moved for reconsideration of the appellate court's opinion, and the appellate court

denied Blalock's motion on September 30, 2002.[1]

Blalock timely filed a notice of appeal of the appellate court's decision in the Ohio

Supreme Court.  Blalock, represented by counsel, raised eleven propositions of law in his

memorandum in support of jurisdiction:

PROPOSITION OF LAW NO. I

---

[1]  The appellate court's opinion was issued on September 5, 2002.  That opinion and
the order denying Blalock's motion for reconsideration were both journalized on September
30, 2002.

A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN HIS INDICTMENT HAS BEEN SECURED BY THE MANIPULATION OF THE GRAND JURY PROCESS BY INDICTING FOUR (4) PEOPLE FOR THE SAME OFFENSE KNOWING THAT THERE WAS NO PROBABLE CAUSE IN ORDER TO COERCE ONE OR MORE OF THE CO-DEFENDANTS TO TESTIFY

PROPOSITION OF LAW NO. II

A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT PERMITS THE PROSECUTOR TO BOLSTER THE TESTIMONY OF AN IMPEACHED WITNESS HAVING HER READ HER STATEMENTS TO THE POLICE

PROPOSITION OF LAW NO. III

A DEFENDANT IS  DENIED HIS CONSTITUTIONAL RIGHT OF CONFRONTATION AND CROSS-EXAMINATION WHERE COUNSEL IS NOT ALLOWED TO FULLY EXPLORE THE BIAS AND MOTIVE OF A WITNESS FOR TESTIFYING

PROPOSITION OF LAW NO. IV

A DEFENDANT IS DENIED HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE WHEN THE COURT WOULD NOT ALLOW EVIDENCE CONCERNING AN ADMISSION BY A CO-DEFENDANT TO THE KILLING OF THE DECEDENT

PROPOSITION OF LAW NO. V

A DEFENDANT IS DENIED A FAIR TRIAL WHEN IMPROPER PROSECUTORIAL ARGUMENTS ARE MADE TO THE JURY

PROPOSITION OF LAW NO. VI

A DEFENDANT IS DENIED DUE PROCESS OF LAW AND A FAIR AND IMPARTIAL JURY WHEN THE COURT FAILS TO TAKE PROPER ACTION TO DETERMINE THE CAUSE OF DISTRESS BY A JUROR WHEN THE VERDICTS WERE ANNOUNCED IN OPEN COURT

PROPOSITION OF LAW NO. VII

A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILS TO GIVE ANY INSTRUCTION CONCERNING ALIBI

PROPOSITION OF LAW NO. VIII

A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILS TO GIVE AN INSTRUCTION CONCERNING THE WILLFUL LIES BY A STATE'S WITNESS

PROPOSITION OF LAW NO. IX

A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE NO INSTRUCTION RESULTING IN AN IMPERMISSIBLE AND UNCONSTITUTIONAL PRESUMPTION

PROPOSITION OF LAW NO. X

A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULES A MOTION FOR JUDGMENTS OF ACQUITTAL WHERE THERE IS INSUFFICIENT EVIDENCE TO PERMIT A RATIONAL FACTFINDER TO RETURN A VERDICT OF GUILTY

PROPOSITION OF LAW NO. XI

A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN HE WAS CHARGED UNDER A DUPLICITOUS AND MULTIPLICITOUS INDICTMENT

(Punctuation in the original). On February 19, 2003 the Ohio Supreme Court dismissed Blalock's appeal as not involving any substantial constitutional question.

C.   *Post-conviction relief*

On February 21, 2002 Blalock filed in the trial court a motion for a new trial or, in the alternative, a petition for post-conviction relief. Blalock recited information in the presentence reports of Johnson and McCauley and argued that the information showed that Blalock had been denied fundamental fairness in violation of due process because he had been convicted on the basis of perjured testimony. On October 21, 2002 the trial court denied Blalock's motion for a new trial without a hearing as the motion cited no new information which would warrant a new trial. The court also denied Blalock's motion post-conviction relief as failing to produce evidence which would warrant a hearing.

8

Blalock, represented by counsel, timely appealed the trial court's denial of his motions.

Blalock raised two assignments of error in the state appellate court:

I.     DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT AWARD A NEW TRIAL.

II.    DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT AT LEAST GRANT AN EVIDENTIARY HEARING CONCERNING DEFENDANT'S ALLEGATIONS.

On July 9, 2003 the appellate court affirmed the judgment of the trial court.  Blalock moved for reconsideration of the court's opinion, and the court denied this motion on July 9, 2003.

Blalock, represented by counsel, timely filed a notice of appeal in the Ohio Supreme Court.  Blalock raised two propositions of law in his memorandum in support of jurisdiction:

**PROPOSITION OF LAW NO. I**

**A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN A COURT FAILS TO AWARD A NEW TRIAL WHEN THE DEFENDANT HAD DISCOVERED THAT HE WAS CONVICTED ON PERJURED TESTIMONY.**

**PROPOSITION OF LAW NO. II**

**A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULES THE MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE WITHOUT AN EVIDENTIARY HEARING.**

On November 19, 2003 the Ohio Supreme Court dismissed Blalock's appeal as not involving any substantial constitutional question.

D.    *Resentencing and appeal*

On April 29, 2003 and upon remand the trial court resentenced Blalock to five years' imprisonment to run consecutively to his other sentences.

Blalock, represented by counsel, timely filed in the state appellate court a notice of

9

appeal of his resentencing.  Blalock raised four assignments of error in his appeal:

> 1.      Defendant was denied due process of law when the court sentenced defendant for a third degree felony with a presumption of prison.
>
> 2.      Defendant was denied due process of law when the court imposed a consecutive sentence.
>
> 3.      Defendant was denied due process of law when the court stated that this was the worse [sic] form of the offense.
>
> 4.      Defendant was denied due process of law when the court imposed a maximum consecutive sentence.

On January 8, 2004 the state appellate court affirmed the judgment of the trial court.  Blalock

moved the court to reconsider its decision, and the court denied the motion.

Blalock, represented by counsel, timely filed a notice of appeal in the Ohio Supreme

Court.  He asserted four propositions of law in his memorandum in support of jurisdiction:

> PROPOSITION OF LAW NO. I:
> A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT SENTENCES A DEFENDANT FOR A THIRD DEGREE FELONY PRESUMING THAT THERE IS A PRESUMPTION OF PRISON
>
> PROPOSITION OF LAW NO. II:
> A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT IMPOSES A CONSECUTIVE SENTENCE FOR TAMPERING WITH EVIDENCE WHICH INVOLVES THE SAME PERSON INVOLVED IN THE AGGRAVATED MURDER PROSECUTION.
>
> PROPOSITION OF LAW NO. III:
> A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT RULES THAT MOVING A DEAD BODY IS THE WORSE [sic] FORM OF THE OFFENSE OF TAMPERING WITH EVIDENCE.
>
> PROPOSITION OF LAW NO. IV:
> A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN THE COURT IMPOSES A MAXIMUM CONSECUTIVE SENTENCE AFTER SENTENCING DEFENDANT TO A TERM OF LIFE IMPRISONMENT FOR AGGRAVATED MURDER INVOLVING THE SAME PERSON.

10

The Ohio Supreme Court dismissed Blalock's appeal as not involving any substantial constitutional question on May 12, 2004.

Blalock filed his petition for a federal writ of habeas corpus on October 28, 2004.  In his petition he asserts nine grounds for relief:

> **A.    Ground one:        SIXTH AND FOURTEENTH AMENDMENT**
> **Supporting Facts:** Petitioner requested a transcript of a grand jury proceedings.  The court ordered the grand jury proceedings but would not disclose it to counsel.  Later the grand jury transcript was produced showing that the grand jury proceedings were manipulated.  Misrepresentations were made in order to secure an indictment against petitioner.  This denied petitioner his rights under the Sixth and Fourteenth Amendments.
>
> **B.    Ground two:        SIXTH AND FOURTEEN [sic] AMENDMENT**
> **Supporting Facts** Petitioner was denied a fair trial when the court permitted the prosecutor to bolster the testimony of Arketa Willis because she had been cross-examined and had admitted that she made a number of inconsistent statements.  Moreover, petitioner was not allowed his constitutional of [sic] confrontation and cross-examination of various witnesses.
>
> **C.    Ground three:       SIXTH AND FOURTEENTH AMENDMENT**
> **Supporting Facts** Petitioner was denied his right to present a defense.  Petitioner attempted to offer evidence that Arketa Willis had admitted that she was the one responsible for the death of Howard Rose.  However, the court would not allow this evidence.
>
> **D.    Ground four:       FOURTEENTH AMENDMENT**
> **Supporting Facts** Petitioner was denied a fair trial by reason of improper prosecutorial argument.

**GROUND FIVE:      SIXTH AND FOURTEENTH AMENDMENT**
**SUPPORTING FACTS:**    Petitioner was denied a fair trial and a fair and impartial jury when the court did not take proper action and determine the cause of distress by a juror when the verdicts were announced in open court.

**GROUND SIX:       FOURTEENTH AMENDMENT**
**SUPPORTING FACTS:**    Petitioner was denied due process of law when the court did not even fully inform the jury concerning the issues in the case.  The court did not give any instruction concerning alibi.  The court did not give any instruction concerning

11

the willful lies and falsehoods of Arketa Willis.  The court gave instructions which
resulted in impermissible and unconstitutional presumptions thus relieving the state of
its burden or [sic] proof.

**GROUND SEVEN: FOURTEENTH AMENDMENT**
**SUPPORTING FACTS:**    Petitioner was denied due process of law when the court
refused to grant a motion of judgment of acquittal as there was insufficient evidence
to permit a rational factfinder to return a verdict of guilty.  In addition, petitioner was
charged under duplicitous and multiplicitous indictment [sic] and there was no
requirement that the jury unanimously agree on the elements of the offense this was
before it could return verdicts of guilty [sic].

**GROUND EIGHT:  FOURTEENTH AMENDMENT**
**SUPPORTING FACTS:**    Petitioner was denied due process of law when the
prosecutor was allowed to argue at petitioner's trial that petitioner was the one who
shot the decedent Howard Rose.  However, at a trial of a co-defendant, the same
prosecutor argued that this person was the one who had shot Howard Rose.

**GROUND NINE:    FOURTEENTH AMENDMENT**
**SUPPORTING FACTS:**    Petitioner was denied due process of law when he was not
awarded a new trial.  Petitioner produced evidence, after the trial in this case, showing
beyond a reasonable doubt that he was actually innocent of the offenses.  After this
was presented to the court petitioner was not granted a new trial.  This denied
petitioner his right of due process of law because he was sentenced to a term of life
imprisonment when it was shown that he was actually innocent of the offenses.

Respondent filed an Answer on March 24, 2005 (Docket #14).  Petitioner filed a Traverse on

May 6, 2005 (Docket #24).  Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction

Where an application for a writ of habeas corpus is made by a person in custody under
the judgment and sentence of a State court of a State which contains two or more
Federal judicial districts, the application may be filed in the district court for the district
within which the State court was held which convicted and sentenced him and each of
such district courts shall have concurrent jurisdiction to entertain the application.

12

28 U.S.C. § 2241(a) and (d).  Blalock was sentenced by the Court of Common Pleas of Cuyahoga County, Ohio and filed his petition for a writ of habeas corpus in the Northern District of Ohio.  This court has jurisdiction over Blalock's petition.

B.   *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All Blalock's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.   *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  Federal courts lack jurisdiction to consider any claim that was not fairly presented to the state courts.  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404

U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that a claim is a federal claim, "not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner need not cite "'book and verse on the federal constitution,'"  *Picard*, 404 U.S. at 278, to apprise state courts that his claim is based on federal law:

> In determining whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *see also Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 193-94 (2d Cir. 1982)).

A petitioner does not fairly present a federal claim to a state court merely by presenting the facts underlying his claim for relief, *Picard,* 404 U.S. at 277, or by making  a  general reference to a broad constitutional guarantee, such as "due process" or "the right to a fair trial," *Gray v. J.D. Nederland*, 518 U.S. 152, 163 (1996); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000*).* "To escape procedural default, claims that the rights to due process and to

a fair trial have been violated must of themselves be fairly presented, rather than functioning

as catchall language appearing within the presentation of other non-constitutional arguments."

*Blackmon*, 394 F.3d at 400.  The petitioner must present argument or citations to cases which

identify the substance of the particular analysis upon which petitioner relies in asserting his

federal constitutional claim.  *Gray*, 518 U.S. at 162-63; *see also Blackmon*, 394 F.3d at 400-

01 (holding that failure to cite to federal case law identifying how the alleged errors constitute

denials of "fair trial" and "due process" rights or identifying how petitioner's case mirrored

cases in which such denials have been found and failure to develop any cogent arguments

regarding those rights beyond the naked assertion that they were violated is insufficient for fair

presentment).  Moreover, "ordinarily a state prisoner does not 'fairly present' a claim to a state

court if that court must read beyond a petition or a brief (or a similar document) that does not

alert it to the presence of a federal claim in order to find material, such as a lower court

opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Blalock has exhausted direct appeals for all his claims.  Because Blalock has no

remaining state remedies available, his claims have been exhausted.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his or her

constitutional claims to the highest state court in a federal constitutional context.  *Anderson*,

489 U.S. 4; *Picard*, 404 U.S. 270.  Reasons of federalism and comity generally bar federal

habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state

proceeding due to respondent's failure to raise them there as required by state procedure."

15

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted a claim because the petitioner failed to abide by a state procedural rule, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .  Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .  This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence . . . ."  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Respondent argues that Blalock has procedurally defaulted his fifth, sixth, eighth, and

16

part of his seventh grounds for relief.

    1.    *Procedural default and Blalock's fifth ground for relief*

       Respondent argues that Blalock has procedurally defaulted his fifth claim for relief because he failed to present this claim to the state courts in a federal constitutional context.

       In his fifth claim for relief Blalock argues that he was denied a fair trial and a fair and impartial jury because the court failed to determine the cause of one juror's distress when the court read the verdicts.  Blalock presented this claim to the state appellate court as his sixth assignment of error and to the Ohio Supreme Court as his sixth proposition of law.  In his briefs to the state courts Blalock cited a single case to support his claim, *Cunningham v. St. Alexis Hosp. Med. Ctr.*, 143 Ohio App. 3d 353, 758 N.E.2d 188 (2001).  Blalock quoted *Cunningham* for the proposition that "Section 5, Article I of the Ohio Constitution guarantees the right to a trial by jury, and this right 'carries with it by necessary implication the right to trial by a jury composed of unbiased and unprejudiced jurors.'"  *Id.*, 143 Ohio App. 3d at 374, 758 N.E.2d at 203 (quoting *State v. Hessler*, 90 Ohio St. 3d 108, 133, 734 N.E.2d 1237, 1259 (2000)).

       Blalock makes no argument and cites no case which would identify his claim that he was denied a fair trial and a fair and impartial jury as a federal constitutional claim rather than as a state claim stating a violation of the Ohio Constitution, Art. I, § 5.  Thus, Blalock has failed fairly to present his claim to the Ohio courts as a federal constitutional claim.  Blalock does not demonstrate cause for the default and actual prejudice as a result of the alleged failure to investigate the juror's hesitancy, nor does he demonstrate that failure to consider the claim will

result in a fundamental miscarriage of justice.  For these reasons the magistrate judge recommends that the court dismiss Blalock's fifth ground for relief as procedurally defaulted.

> 2.    *Procedural default and Blalock's sixth ground for relief*

Respondent asserts that Blalock has procedurally defaulted his sixth ground for relief. Respondent argues that the first two subclaims within Blalock's sixth ground for relief were procedurally defaulted because Blalock did not fairly present them in a federal constitutional context and because Blalock defaulted the subclaims by failing to ask for the requested instruction at trial.  Respondent argues that the third subclaim within Blalock's sixth ground for relief was procedurally defaulted because Blalock failed to object to the alleged error at trial.

Blalock's sixth ground for relief contends that Blalock was denied due process of law when the court (1) did not give any instruction concerning an alibi; (2) did not give any instruction concerning the willful lies and falsehoods of Arketa Willis; and (3) gave an instruction which resulted in constitutionally impermissible presumptions. Blalock presented the first two subclaims to the state appellate court as his seventh and eighth assignments of error and to the Ohio Supreme Court as his seventh and eighth proposition of law.  Blalock cited Ohio statutory law and cases alone in arguing these subclaims before the state courts. He cited no federal law and did not explicitly state that the alleged error violated federal law. Blalock's use of the phrase "due process" was insufficient of itself to fairly present his claims as federal claims, for two reasons.  First, making a general reference to such a broad constitutional guarantee as due process is insufficient to present the substance of his federal claim to the state court. *Gray*, 518 U.S. at 163.  Second, Blalock's sole reliance on state law implies that Blalock's due process argument rests on the Ohio Constitution rather than on the

18

federal constitution.  *See Ohio Valley Radiology Assocs. v. Ohio Valley Hosp. Ass'n*, 28 Ohio St. 3d 118, 125, 502 N.E.2d 599, 604 (1986) ("Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution guarantee due process of law . . . ."); *see also Lowry v. Lowry*, 48 Ohio App. 3d 184, 190, 549 N.E.2d 176, 181 (1988) ("The Fourteenth Amendment to the United States Constitution, as well as Section 16, Article I of the Ohio Constitution, guarantees that no person shall be deprived of life, liberty, or property without due process of law.").  For these reasons Blalock failed fairly to present his first two subclaims to the state courts in a federal constitutional context.

Blalock also defaulted these claims by failing to object to the court's jury instructions at trial.  Ohio Crim. R. 30(A) provides, "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict stating specifically the matter objected to and the grounds of the objection."  *See also State v. Stojetz*, 84 Ohio St. 3d 452, 458, 705 N.E.2d 329, 337 (1999) (finding that failure to object to the inclusion of a desired instruction waives that issue on appeal); and *State v. Frazier*, 73 Ohio St. 3d 323, 338, 652 N.E.2d 1000, 1014 (1995) ("Absent plain error, the failure to object to improprieties in jury instructions, as required by Crim. R. 30, is a waiver of the issue on appeal.") (quoting *State v. Underwood*, 3 Ohio St. 3d 12, 444 N.E.2d 1332, 1333 (1983)).  The state appellate court noted Blalock's failure to object to the jury instructions at trial and found that this default allowed Blalock relief only under a "plain error" standard.  *State v. Blalock*, 2002 WL 2027520, at *7 (Ohio App. Sept. 5, 2002).  The United States Supreme Court has found that the requirement of Ohio Crim. R. 30(A) that defendants object

contemporaneously to jury instructions "is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice." *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000) (citing *Engle v. Isaac,* 456 U.S. 107 (1982)).

Blalock also failed to object at trial to the court's jury instruction which he now claims created a constitutionally impermissible presumption. The state appellate court noted this failure and found that it allowed Blalock relief only under a "plain error" standard. *Blalock*, 2002 WL 2027520 at *8.

For the reasons given above Blalock has defaulted all of the claims included in his sixth ground for relief. Blalock does not show cause and prejudice for his defaults, nor does he demonstrate that failure to consider these claims will result in a fundamental miscarriage of justice. For these reasons the magistrate judge recommends that the court dismiss Blalock's sixth ground for relief as procedurally defaulted.

### 3.    Procedural default and Blalock's seventh ground for relief

Respondent contends that Blalock has in part defaulted his seventh ground for relief. Blalock's seventh ground for relief claims that (1) he was denied due process of law when the court denied his motion for acquittal for insufficient evidence of guilt, (2) he was charged under duplicitous and multiplicitous indictment, and (3) the jury was not instructed that it must unanimously agree on the elements of the offense before it could return verdicts of guilty. Respondent contends that Blalock defaulted his second subclaim because he failed to object to the indictment at trial.

Under Ohio Crim R. 12(B) & (C)(2) a motion alleging a defect in the indictment must be made before trial. The state appellate court noted that Blalock had failed timely to make

20

such a motion and had, therefore, waived the issue for purposes of appellate review. *Blalock*, 2002 WL 2027520 at *9. Blalock does not argue that Ohio Crim. R. 12 is not an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Nor does Blalock show cause and prejudice for his default or demonstrate that failure to consider this claim will result in a fundamental miscarriage of justice. For these reasons the magistrate judge recommends that the court dismiss the second subclaim in Blalock's seventh ground for relief as procedurally defaulted.

      *4.    Procedural default and Blalock's eighth ground for relief*

      Respondent contends that Blalock procedurally defaulted his eighth ground for relief because he never presented this claim to the state courts. In his eighth ground for relief Blalock argues that he was denied due process when the prosecutor argued at his trial that Blalock shot the victim while arguing at a co-defendant's trial that the co-defendant was the one who shot the victim.

      Blalock never presented to the state courts his claim that the alleged varying claims by the prosecutor regarding who shot the victim violated Blalock's right to due process. Blalock does not show cause and prejudice for this default, nor does he demonstrate that failure to consider this claim will result in a fundamental miscarriage of justice. For this reason the magistrate judge recommends that the court dismiss Blalock's eighth ground for relief as procedurally defaulted.

III

      The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of

21

habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from

22

relevant Supreme Court precedent and still arrives at an opposite result. *Id.* "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Blalock's remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.    *Whether alleged misrepresentations to the grand jury violated rights protected by the Sixth and Fourteenth Amendments*

Blalock alleges the following in his first ground for relief:

> Petitioner requested a transcript of a grand jury proceedings. The court ordered the grand jury proceedings but would not disclose it to counsel. Later the grand jury transcript was produced showing that the grand jury proceedings were manipulated. Misrepresentations were made in order to secure an indictment against petitioner. This denied petitioner his rights under the Sixth and Fourteenth Amendments.

Blalock does not specify in his petition the particular rights protected by the Sixth and Fourteenth Amendments allegedly violated by the state's conduct. In his brief to the Ohio appellate court and Ohio Supreme Court Blalock argued that the failure to provide his counsel with a transcript of the grand jury proceedings violated his right to due process and that his

indictment was the result of an abuse of the grand jury process.

The state appellate court hearing Blalock's direct appeal made the following findings

regarding these claims in overruling Blalock's first assignment of error:

> Appellant first argues that the court erred by denying his request to review the grand jury transcript. He contends that the grand jury process was abused because Detective Joseph Hribar, the investigating police officer, had testified at a preliminary hearing that he did not know who killed Rose. Apparently, appellant asks us to infer that Hribar still did not know who killed Rose when Hribar testified before the grand jury, and therefore there was no probable cause to indict appellant.

> "[A]n accused is not entitled to see grand jury transcripts unless the ends of justice require it and he shows that 'a particularized need for disclosure exists which outweighs the need for secrecy.'" *State v. Benge* (1996), 75 Ohio St. 3d 136, 145, 661 N.E.2d 1019 (quoting *State v. Greer* (1981), 66 Ohio St. 2d 139, 420 N.E.2d 982). "When the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial, grand jury proceedings may be disclosed." *State v. Sellards* (1985), 17 Ohio St. 3d 169, 173, 478 N.E.2d 781.

> Appellant's speculation about the content of Detective Hribar's grand jury testimony challenges the basis for the grand jury's finding of probable cause. However, "[t]he grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra* (1974), 414 U.S. 338, 344-45, 94 S. Ct. 613, 38 L. Ed.2d 561. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Villasino v. Maxwell* (1963), 174 Ohio St. 483, 485, 190 N.E.2d 265. Consequently, a challenge to the grand jury's finding of probable cause does not demonstrate a particularized need for disclosure of the testimony.

*Blalock*, 2002 WL 2027520 at *3-*4.

Blalock erroneously claims that the state court considered only whether a transcript of

the grand jury proceeding should be produced, not whether the proceeding itself denied

Blaloack fundamental fairness. The state court noted that Blalock "asks us to infer that Hribar

still did not know who killed Rose when Hribar testified before the grand jury, and therefore

there was no probable cause to indict appellant," *id*. at *3, and it implicitly declined to draw that inference.  The state court also noted that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence," and the court consequently overruled Blalock's assignment of error.

Blalock does not show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or that the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented to it.  For this reason the magistrate judge recommends that the court overrule Blalock's first ground for relief.

B.    *Whether allowing the prosecutor to bolster a witness's testimony and not allowing a cross-examination of a police officer regarding the penalties faced by a state witness violated Blalock's right to a fair trial*

Blalock alleges the following in his second ground for relief:

Petitioner was denied a fair trial when the court permitted the prosecutor to bolster the testimony of Arketa Willis because she had been cross-examined and had admitted that she made a number of inconsistent statements.  Moreover, petitioner was not allowed his constitutional of [sic] confrontation and cross-examination of various witnesses.

These claims were presented as Blalock's second and third assignments of error on direct appeal to the state appellate court.

In reviewing the decision of state courts, this court does not consider questions of state law:

"[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764 (1990); see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

25

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, whether the Ohio appellate courts erred under state law by allowing the state to bolster the testimony of Arketa Willis after she was impeached on cross-examination or by not allowing Blalock to cross-examine a police officer about the potential penalties Willis faced before she entered into her plea agreement is not within the purview of this court.  This court has jurisdiction only to consider whether Blalock's conviction under these circumstances violated the constitution or laws of the United States.

Blalock alleges that the trial court's evidentiary rulings deprived him of the right to a fair trial.  The right to a fair trial is a right implicit in the due process clauses of the Fifth and Fourteenth Amendments.  *See United States v. Agurs*, 427 U.S. 97, 107 (1976).  The analysis of alleged violations of the right is identical under either amendment.  *Id.*  "A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*, 349 U.S. 133, 136 (1955).  "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding."  *Strickland v. Washington*, 466 U.S. 668, 684 (1984).  "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law."  *Murchison*, 349 U.S. at 136 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).

A federal court reviewing a habeas petition is extremely limited in its review of state evidentiary rulings:

> Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.  However, this circuit has held that where the violation of a state's evidentiary rule has resulted in the denial of fundamental fairness, thereby violating due

26

process, federal habeas corpus relief will be granted.

*Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) ("State court evidentiary rulings do not rise to the level of due process violations unless they "offend ... some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (quoting *Patterson v. New York,* 432 U.S. 197, 202 (1977)); and *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004).

The state appellate court hearing Blalock's direct appeal made the following findings regarding these claims in overruling Blalock's second and third assignments of error:

### Assignment of Error II

Appellant next argues that the court erred by allowing the state to bolster the testimony of Arketa Willis after she was impeached on cross-examination. Willis testified that she provided three statements to the police, two before she was indicted, on April 6 and 9, 2001, and one after she was indicted, in June or July 2001. On cross examination, she admitted that "basically everything [she] told the police on April the 6th was a lie." On redirect, the prosecutor instructed Willis to read the April 6 statement aloud and identify which portions were true and which were not.

Appellant claims the April 6 statement was a prior consistent statement which was inadmissible as hearsay "except to rebut an express or implied charge * * * of recent fabrication or improper influence or motive." Evid.R. 801(D)(1)(b). He claims the April 6 statement which was used on cross-examination could not also be introduced for purposes of rebuttal because they were contemporaneous; the consistent statement did not precede the inconsistent one.

When a portion of a prior written statement is used to impeach a witness by showing an inconsistency with the current testimony, the entire document may be admitted on rebuttal, to rehabilitate the witness. *Shellock v. Klempay Bros.* (1958), 167 Ohio St. 279, 282, 148 N.E.2d 57; *State v. Johnson* (Nov. 12, 1998), Cuyahoga App. No. 57790; *State v. Rivera* (Nov. 9, 1989), Cuyahoga App. No. 56158. Willis testified that parts of her April 6 statement were true, and identified those parts. This testimony rebutted the implication that her current testimony was entirely fabricated. Therefore, we overrule the second assigned error.

### Assignment of Error III

Appellant urges that he was denied his right to confront the witnesses against him because the court would not allow him to cross-examine a police officer about the potential penalties Willis faced before she entered into her plea agreement. Officer Hribar testified that when Willis spoke to the police after her indictment in May, she was facing a charge of capital murder which involved a potential death sentence. The jury was also informed that the capital specification was removed from the indictment as to all of the defendants, including Willis, before Willis entered her guilty plea. Thus, at the time she entered into her plea, all defendants, including Willis, faced a life sentence. Willis testified that her plea agreement called for the dismissal of the murder, aggravated murder, kidnaping, and aggravated robbery charges in exchange for her testimony, but the court refused to allow defense counsel to inquire about the specific penalties that Willis faced after her plea, limited the jury to considering that Willis faced a reduced sentence.

The trial court has broad discretion in determining the scope of cross examination. The jury heard evidence that Willis faced reduced charges and a reduced sentence as a result of her plea and agreement to testify. Appellant was not prejudiced by the court's refusal to allow him to inquire about the specific penalties that Willis faced after her plea.

*Blalock*, 2002 WL 2027520 at \*4-\*5.

Blalock cites several Ohio cases and claims that they show that the trial court's rulings violated Ohio evidentiary law. He also cites United States Supreme Court cases and claims that they show that the trial court's rulings violated federal evidentiary law. But Blalock does not show that the state court evidentiary rulings rose to the level of due process violations by offending fundamental principles of justice as determined by the Supreme Court. For this reason the magistrate judge recommends that the court overrule Blalock's second ground for relief.

C.  *Whether the trial court's refusal to allow Blalock to offer Willis's admission that she was responsible for the death of Rose denied Blalock a fair trial*

Blalock alleges the following in his third ground for relief:

Petitioner was denied his right to present a defense. Petitioner attempted to offer

28

evidence that Arketa Willis had admitted that she was the one responsible for the death of Howard Rose.  However, the court would not allow this evidence.

This claim was presented as Blalock's fourth assignment of error on direct appeal to the state appellate court.

The state appellate court hearing Blalock's direct appeal made the following findings regarding this claim in overruling Blalock's fourth assignment of error:

> Appellant argues the court erred by excluding an out-of-court statement by co-defendant Ernest McCauley that Willis admitted to him that she killed Rose. McCauley did not testify in this case. Willis did. An out of court statement by one person (McCauley) about an out-of-court statement by another person (Willis) is double hearsay.
>
> We are aware of no exception to the hearsay rule which would allow the admission of McCauley's out of court statement to the police. The statement would clearly have been "offered in evidence to prove the truth of the matter asserted," that is, that Willis killed Rose. McCauley's statement to police implicating Willis clearly does not further a conspiracy and therefore cannot be considered a non-hearsay co-conspirator's statement. Evid. R. 801(D)(2); *State v. Carter* (1995), 72 Ohio St. 3d 545, 651 N.E.2d 965, paragraph four of the syllabus. Even though McCauley did not testify at trial and was probably "unavailable" within the meaning of Evid.R. 804(A)(1) because he remained subject to prosecution, his statement did not meet any of the exceptions of Evid. R. 804(B).
>
> Even if McCauley's statement to the police were admissible, Willis's statement to McCauley was not. Again, the statement would have been offered in evidence to prove the truth of the matter asserted, that Willis killed Rose. See Evid. R. 801(C). This statement by Willis was not made under oath subject to cross examination. Evid. R. 801(D)(1). None of the exceptions set forth in Evid. R. 803 applies. Because she testified at trial, Evid. R. 804 is inapplicable.
>
> Therefore, the court did not err by excluding McCauley's out-of-court statement that Willis admitted she killed Rose.

*Blalock*, 2002 WL 2027520 at *5-*6.

As already noted this court may grant habeas relief on the basis of alleged errors in state evidentiary rulings only when the errors violated the due process requirement of

fundamental fairness.  Blalock cites *Chambers v. Mississippi*, 410 U.S. 284 (1973), for the proposition that exclusion of an oral confession by a third party denied the accused a fair trial. *Chambers* is distinguishable from the instant case, however.  In *Chambers*, the trial court did not allow the defendant to cross-examine a defense witness, Gable McDonald ("McDonald"), regarding a confession which McDonald had signed.  The trial court also prevented the defendant from calling witnesses who had heard McDonald admit committing the crime.  The Supreme Court found these limitations on the defense denied the defendant "a trial in accord with traditional and fundamental standards of due process."  *Id.* at 302.  In the instant case, however, the trial court denied Blalock's attempt to introduce McCauley's statement to police officers regarding what Willis had said.  Such *double* hearsay was not at issue in *Chambers*.

Blalock does not show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or that the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented to it.  For this reason the magistrate judge recommends that the court overrule Blalock's third ground for relief.

D.    *Whether prosecutorial misconduct deprived Blalock of a fair trial*

Blalock alleges in his fourth ground for relief that he was denied a fair trial by improper prosecutorial argument.  This claim was presented as Blalock's fifth assignment of error on direct appeal to the state appellate court.

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith,* 455 U.S. at 219.  The

aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted).

The Sixth Circuit considers four factors in weighing the seriousness of prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355-56 (6th Cir. 1993)).  To obtain habeas relief a petitioner must show that prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)), or was sufficiently egregious as to render the trial fundamentally unfair, *United States v. Young,* 470 U.S. 1, 11-12 (1985). Ultimately, a petitioner must show that a trial error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht,* 507 U.S. at 637.

The state appellate court hearing Blalock's direct appeal made the following findings regarding this claim in overruling Blalock's fifth assignment of error:

> Appellant next asserts that he was denied a fair trial because of improper prosecutorial argument. First, he claims the prosecutor improperly commented on his failure to call a witness. In closing argument, the prosecutor said:

> "Ladies and gentlemen, we know that 299-2364 and 299-9459, we know one thing.  We know those phones are listed to Marcus Blalock.  These are cell phones, ladies and gentlemen, and at any point in time you can give it to someone else and they could be using the phone.  Bernard Blalock said that.  I asked Bernard Blalock, who's Angie?  Angie is his girlfriend.  Do you know if Angie gets to use his phone?

Yes.

"Angie, the woman who Arketa Willis said she saw around 11:00 that night driving around with him. Where is Angie?

"MR. DOYLE: Objection.

"THE COURT: Overruled. It's argument."

Appellant has failed to demonstrate that this statement constitutes a comment on his failure to call a witness. In light of the preceding argument, the question, "Where's Angie?" is more properly construed as a suggestion that Angie made and received calls using one of the cellular telephones. In any event, that single question was so ambiguous and so limited that we cannot say appellant was prejudiced by it.

Appellant also argues the prosecutor improperly expressed his personal opinion of appellant's guilt. Near the end of his closing argument, the prosecutor said:

"You had the benefit of hearing this woman [Willis] for over a day in court. Mr. Bradley [defense counsel] wants to label her a liar. It's not for Mr. Bradley to determine. It's your job. You heard her. She was cross-examined and you make your determination whether what this woman said is unbelievable. We can only bring you the people who were there, ladies and gentlemen. And she was there and she has knowledge but she is not the killer.

"* * *

"Ladies and gentlemen, the evidence in this case has clearly shown that sitting in this courtroom at this moment is a cold-blooded ruthless murderer and he sits right there and his name is Marcus Blalock. * * * This is not the work nor is this bullet in the back of the head the work of Arketa Willis. This is the work of Marcus Blalock. And I ask you to so reflect in the verdict that you return in this case. Thank you."

The prosecutor's argument that the jury should find that appellant killed Rose is not improper. The prosecutor did not express his personal opinion by arguing that appellant was the killer. Therefore, we overrule the fifth assignment of error.

*Blalock*, 2002 WL 2027520 at *6-*7.

Blalock cites *United States v. Young*, 407 U.S. 1 (1985), for the proposition that allowing a jury to hear a prosecutor's personal opinion of a defendant's guilt risks inculcating

the belief that other evidence supports the charges.  There are two problems with this argument.  First, there is no such case as cited by Blalock.  Second, even if there were such a case and it supported the proposition advanced by Blalock, that would not be sufficient to demonstrate that the prosecutor's remarks violated fundamental fairness in the instant case.

As regards the state appellate court's finding that the prosecutor did not express his personal opinion by arguing that appellant was the killer, this was not an unreasonable determination in light of the evidence presented to the state court.  The prosecutor asserted that the *evidence* showed that Blalock was a murderer; he did not bolster that conclusion by asserting that it was his own opinion that Blalock was a murderer.  The appellate court's determination, therefore, that the prosecutor did not express his personal opinion by arguing that appellant was the killer was not an unreasonable determination of the facts in light of the evidence presented to it.

Blalock does not show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or that the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented to it.  For this reason the magistrate judge recommends that the court overrule Blalock's fourth ground for relief.

E.    *Whether denial of Blalock's motion for acquittal and alleged failure to instruct the jury that it must unanimously agree on the elements of the offense violated Blalock's right to due process*

In the claims remaining in Blalock's seventh ground for relief he argues that (1) he was denied due process when the court denied his motion for acquittal for insufficient evidence of guilt and (2) the jury was not instructed that it must unanimously agree on the elements of the

33

offense before it could return verdicts of guilty.  The claim that Blalock was denied due process when the court denied his motion for acquittal for insufficient evidence was presented as Blalock's tenth assignment of error on direct appeal to the state appellate court.  The claim that the jury was not instructed that it must unanimously agree on the elements of the offense before it court return verdicts of guilty was presented as part of Blalock's eleventh assignment of error to the state appellate court.[2]  That court did not address the issue.

      1.    *Sufficiency of evidence*

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).  In addition, a habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt. *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981).  Circumstantial evidence may support a conviction, *Tilley v. McMackin*, 989 F.2d 222, 225 (6th Cir. 1993), and such evidence need not remove every reasonable

---

    [2]  The claim was not presented to the Ohio Supreme Court.

hypothesis except that of guilt.  *Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).

The role of the reviewing court in considering such a claim is limited:

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.  *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).   "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

The state appellate court hearing Blalock's direct appeal made the following findings regarding Blalock's claim of insufficient evidence to convict in overruling Blalock's tenth assignment of error:

> Appellant claims the court erred by overruling his motions for judgment of acquittal.  "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Dennis* (1997), 79 Ohio St. 3d 421, 430, 683 N.E.2d 1096; *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E.2d 492. Sufficiency is a test of adequacy; that is, whether the evidence is legally sufficient to sustain the verdict as a matter of law.  *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.  We examine the evidence supporting appellant's conviction on each charge:

> *Kidnaping.*  Willis's telephone calls to appellant indicated he was "busy" with Rose for at least an hour after she called.  Rose died from a gunshot wound to the head, inflicted at point-blank range.  Viewed in the light most favorable to the state, the jury could infer from this that appellant restrained Rose for the purpose of inflicting serious physical harm on him.  R.C. 2905.01(A)(3).

35

*Aggravated Robbery.* Rose's sister, Kimberly Rose, testified that Rose was carrying approximately $1000 cash and approximately $3000 in cocaine on the day of his murder. Willis also testified that Rose had a large amount of cash. His body was found burned beyond recognition; no wallet was found. The jury could infer from this testimony that appellant or one of his accomplices took the money from Rose either before or after his death. *State v. Twyford* (2002), 94 Ohio St. 3d 340, 354, 763 N.E.2d 122 (robbery charge is not invalid because victim was dead at the time the property was taken).

*Murder/Aggravated Murder.* Appellant argues that the only witness to connect him to the death of Howard Rose was Arketa Willis and her testimony was incredible. The credibility of witnesses was a matter for the jury to decide. While other aspects of her testimony changed, Willis consistently said that appellant told her he shot Rose. The forensic evidence disclosed that Rose was shot at point blank range. Therefore, there was sufficient evidence for the jury to conclude that appellant purposely caused Rose's death.

Appellant challenges the aggravated murder convictions on the ground that there was no evidence of kidnaping or aggravated robbery. As pointed out above, we find sufficient evidence to support these charges.

*Tampering with Evidence.* Appellant urges that there is no support for the charge of tampering with evidence because the only item which was altered, destroyed, concealed or removed was the victim's body, and a body is not a "thing" which can be altered, destroyed, concealed or removed within the meaning of the statute. We disagree. *State v. Canaday* (April 16, 1992), Cuyahoga App. No. 60355, at 38.

*Obstructing Justice.* We agree with appellant that there was insufficient evidence to support the charge of obstructing justice. R.C. 2921.32 "consolidates and extends similar provisions in former Ohio statute law, so that the new section is roughly equivalent to the common law crime of being an accessory after the fact." 1974 Committee Comment to H.B. 511. In order to prove obstruction of justice, the state must prove an underlying crime committed by another. *State v. Logan* (1991), 77 Ohio App. 3d 333, 336, 602 N.E.2d 308. In this case, however, there was no evidence of a crime committed by another; appellant was the principal offender in all of the underlying crimes. Therefore, appellant could not have been guilty of destroying or concealing evidence or communicating false information for the purpose of hindering the discovery, apprehension, prosecution, conviction or punishment of another offender, and the obstruction of justice charge should have been dismissed.

*Blalock*, 2002 WL 2027520 at *8-*9. Blalock does not directly challenge this statement of

36

facts and law given by the state appellate court. Rather, Blalock points to the statements of witnesses tending to contradict the assertion that Blalock was out of town when Rose's body was disposed of, asserts that Willis' testimony was unworthy of credence, and points to evidence from telephone records which might contradict a claim that Blalock was out of town when Rose's body was disposed of.

Blalock does not show that the state appellate court's finding that there was sufficient evidence to convict Blalock of kidnaping, aggravated robbery, murder, and tampering with evidence was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or that the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented to it. His arguments regarding the credibility of the witnesses at trial are beyond the provenance of this court. In addition, even if some evidence might contradict a claim that Blalock was out of town when Rose's body was disposed of, that does not make the appellate court's findings as to sufficiency unreasonable. For these reasons the magistrate judge recommends that the court overrule Blalock's seventh ground for relief based on sufficiency of evidence.

2. *Alleged failure to give a jury instruction that the jury must unanimously agree on the elements of the offense*

Blalock conflates two arguments regarding jury unanimity in claiming that the court gave the jury a faulty instruction:

> [T]he trial court did not require that the jury unanimously agree as to any theory of conviction. Thus, in this case, some jurors could have agreed on one version of the offense while others on a different version. This violated the requirement that the jury be unanimous. *Richardson v. United States*, 526 U.S. 813, 817 (1999) (**"Calling a**

37

> particular kind of fact an 'element' carries certain legal consequences. . . . **The consequences that matters** (sic) **for this case is that the jury in a federal criminal[3] case cannot convicted** (sic) **unless it unanimously finds that the Government has proved each element. . . .**").

Traverse at 28.  The magistrate judge will address each argument in turn.

First, due process does not require a jury to agree unanimously upon one of several alternative theories of guilt.  *See Schad v. Arizona,* 501 U.S. 624 (1991) (holding that a conviction under an instruction that did not require the jury to unanimously agree upon one of the alternative theories of premeditated murder and felony murder did not constitute a denial of due process).  As Justice Blackmun wrote in his concurrence in *McKoy v. North Carolina,* 494 U.S. 433 (1990):

> Juries are typically called upon to render unanimous verdicts on the ultimate issues of a given case.  But it is understood that different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.  Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.

494 U.S. at 449.  Thus, Blalock's claim that he was denied due process because the jurors might not have agreed as to the *theory* underlying their finding of guilt is without merit.

Second, the trial court's instruction to the jury was sufficiently clear that the jurors should have realized that they must agree unanimously that the state had proved beyond a reasonable doubt each of the elements of the crimes in the indictment.  The court described the elements of each crime of which Blalock was accused and at the end of each recitation of those elements told the jury that if it found that the state had failed to prove any of the essential elements of the offense beyond a reasonable doubt that the jury must find Blalock

---

[3]  Blalock's case was a *state* criminal case.

not guilty.   Trial transcript, v. 8 (Docket #23), pp. 1890-1908.   At the conclusion of these instructions, the court told the jury, "[I]t is necessary that all 12 members of the jury agree upon the verdict."  *Id.* at 1912.  This instruction was sufficiently clear that the jury should have been prevented from the sort of confusion which Blalock alleges.  Thus, Blalock's argument that the instruction violated his right to due process because the juror's might have found him guilty by combing elements of separate offenses is without merit.

For these reasons the magistrate judge recommends that the court overrule Blalock's seventh ground for relief based on an alleged faulty jury instruction.

F.      *Whether the trial court's refusal to grant Blalock a new trial denied his right to due process*

Blalock alleges the following in his ninth ground for relief:

Petitioner was denied due process of law when he was not awarded a new trial. Petitioner produced evidence, after the trial in this case, showing beyond a reasonable doubt that he was actually innocent of the offenses.  After this was presented to the court petitioner was not granted a new trial.  This denied petitioner his right of due process of law because he was sentenced to a term of life imprisonment when it was shown that he was actually innocent of the offenses.

This claim was presented as Blalock's first assignment of error on appeal of the denial of his motion for a new trial.

A showing of actual innocence based on newly discovered evidence is not sufficient to warrant habeas relief:

Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.   Chief Justice Warren made this clear in *Townsend v. Sain, supra,* 372 U.S., at 317, 83 S. Ct., at 759 (emphasis added):

"Where newly discovered evidence is alleged in a habeas application, evidence which

39

could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary hearing.  Of course, such evidence must bear upon the constitutionality of the applicant's detention; *the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.*"

This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-- not to correct errors of fact.  *See, e.g., Moore v. Dempsey,* 261 U.S. 86, 87-88, 43 S. Ct. 265, 265, 67 L. Ed. 543 (1923) (Holmes, J.) ("[W]hat we have to deal with [on habeas review] is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved" ); *Hyde v. Shine,* 199 U.S. 62, 84, 25 S. Ct. 760, 764, 50 L. Ed. 90 (1905) ("[I]t is well settled that upon *habeas corpus* the court will not weigh the evidence") (emphasis in original); *Ex parte Terry,* 128 U.S. 289, 305, 9 S. Ct. 77, 80, 32 L. Ed. 405 (1888) ("As the writ of *habeas corpus* does not perform the office of a writ of error or an appeal, [the facts establishing guilt] cannot be re-examined or reviewed in this collateral proceeding") (emphasis in original).

More recent authority construing federal habeas statutes speaks in a similar vein.  "Federal courts are not forums in which to relitigate state trials."  *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S. Ct. 3383, 3391, 77 L. Ed.2d 1090 (1983).  The guilt or innocence determination in state criminal trials is "a decisive and portentous event."  *Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S. Ct. 2497, 2508, 53 L. Ed.2d 594 (1977).  "Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens."  *Ibid.*  Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

*Herrera v. Collins*, 506 U.S. 390, 400-01 (1993).

While not of itself providing a ground for habeas relief, a claim of actual innocence may cause a reviewing court to consider the merits of a claim which would otherwise be procedurally defaulted or may allowing a court to consider a successive habeas petition.  *See Schlup v. Dole*, 513 U.S. 298 (1995); *Sawyer v. Whitley,* 505 U.S. 333 (1992).  This is an exception created to avoid a fundamental miscarriage of justice, "grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the

40

incarceration of innocent persons." *Herrera*, 506 U.S. at 404.  Nevertheless, even under the "fundamental miscarriage of justice" exception, a petitioner who claims actual innocence must show that a constitutional violation occurred in the underlying state proceeding.  Moreover, a petitioner claiming actual innocence and citing a constitutional violation in the underlying proceeding must also show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt in light of all the evidence.  *Allen v. Yukins*, 366 F.3d 396, 406 (6h Cir. 2004).

The state appellate court hearing Blalock's appeal of the denial of his motion for a new trial made the following findings regarding this claim in overruling Blalock's claim that the trial court had erred in failing to grant him a new trial:

> [D]efendant argues that his conviction is based on perjured testimony and that he is entitled to a new trial based on newly discovered evidence.  The State maintains that the statements made by the two co-defendants were available prior to trial and are not new evidence. . . .
>
> A defendant seeking a new trial based on the ground of newly discovered evidence bears the burden of demonstrating to the trial court that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.  *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370; *Hawkins,* supra at 350, 612 N.E.2d 1227.
>
> With these principals in mind, we proceed to evaluate whether the statements made by two of the co-defendants constitute newly discovered evidence which would have affected the outcome of the trial.
>
> Here, Ernest McCauley, in his statement to the probation officer on October 3, 2001, indicated that Arketa Willis called him on March 23, 2001, told him that she had shot the victim, and asked him to come over. He further indicated that he and Dion Johnson went to Willis' house and then called defendant to come over. He stated that he, Johnson and the defendant merely moved the victim's body into the back of the

41

truck.

Dion Johnson, in his statement to the probation officer on August 16, 2001, indicated that he was cutting the defendant's hair when he received a phone call from McCauley telling him that Willis had shot someone. He indicated that he and the defendant went over to the scene and helped to move the body into the truck. Johnson testified to essentially the same facts at McCauley's subsequent trial which began on September 17, 2002.

Defendant claims that McCauley's and Johnson's statements to the probation officer and Johnson's trial testimony amounted to exculpatory evidence which shows that he is innocent of the offenses for which he has been convicted. He claims that their statements demonstrate that Willis and/or McCauley are the ones responsible for the victim's death and that his conviction is based on perjured testimony. We are not persuaded that defendant's "newly discovered evidence" would have affected his trial result. . . .

*State v. Blalock*, 2003 WL 21360467, at *1-*2 (Ohio App. June 12, 2003). The court also determined that the "new evidence" was at best corroborative of other evidence available to Blalock at trial.

Blalock's argument that he should be granted habeas relief because the trial court violated his due process rights by not granting him a new trial fails. Blalock does not demonstrate by clear and convincing evidence that the state appellate court erred in finding that the "new evidence" cited by Blalock would have affected the result of the trial. Blalock cannot show, therefore, that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt in light of the cited evidence. For this reason the magistrate judge recommends that the court overrule Blalock's ninth ground for relief.

III.

For the foregoing reasons the magistrate judge recommends that the court dismiss Blalock's petition for a federal writ of habeas corpus.

42

Date: May 13, 2005                    /s/Patricia A. Hemann
                                      Patricia A. Hemann
                                      United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985) reh'g denied, 474 U.S. 1111 (1986).