UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS BLALOCK, | ) | Case No.: 1:04 CV 2156 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| JULIUS WILSON, Warden, | ) | |
| | ) | |
| Respondent | ) | <u>ORDER</u> |

On October 28, 2004, Marcus Blalock ("Blalock" or "Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his 2001 conviction for murder, aggravated murder, aggravated robbery, kidnaping, having a weapon under a disability, tampering with evidence, and obstruction of justice. The court referred the case to Magistrate Judge Patricia A. Hemann for preparation of a report and recommendation.

The Magistrate Judge issued her Report and Recommendation ("R&R") on May 13, 2005, recommending that Blalock's petition be denied. (ECF No. 25.) Magistrate Judge Hemann found that parts of four claims were procedurally defaulted, including Petitioner's claims for denial of a fair trial (claim five), denial of due process due to improper jury instruction (claim six), denial of due process due to a duplicitous indictment (claim seven), and denial of due process due to inconsistent prosecutorial arguments (claim eight). She further found Petitioner's remaining five

claims – for misrepresentations to the grand jury (claim one), improper bolstering of testimony (claim two), denial of the right to present a defense (claim three), improper prosecutorial argument (claim four), and denial of due process due to refusal to grant a new trial (claim nine) – did not present decisions that were contrary to, or involved unreasonable applications of, clearly established federal law, or that were based on unreasonable determinations of the facts based on the evidence.

Petitioner filed Objections to the R&R on June 22, 2005. (ECF No. 28.)

In July, 2005, Petitioner filed a motion to expand the record to include a tape recording which he contended established his actual innocence of the charges against him.[1] (ECF No. 29.) The court referred the issue to Magistrate Judge Hemann for a determination on the motion to expand the record, and a ruling as to whether the new, actual innocence evidence would effect the outcome of the original R&R. (ECF No. 39.)

Magistrate Judge Hemann issued a new R&R on February 15, 2006, in which she found that the record should be expanded, but again recommended denying Blalock's habeas petition. (ECF No. 40.) The Magistrate Judge found that after expanding the record, there was new evidence of actual innocence. She further found that the new evidence was sufficient to overcome Petitioner's procedural default on claims five, six, seven, and eight. She then evaluated those claims on their merits. However, the Magistrate Judge found that the previously-defaulted claims did not present decisions that were contrary to, or involved unreasonable applications of, clearly-established federal law, or that were based on unreasonable determinations of the facts based on the evidence.

---

[1] The Magistrate Judge's second R&R (ECF No. 40) extensively cites and discusses the transcript of the tape recording.

The Magistrate Judge also concluded that although Petitioner had presented evidence of his actual innocence, no case law recognized freestanding actual innocence claims in a non-capital case, absent an underlying constitutional violation in the trial process.

Petitioner filed Objections to the second R&R on March 17, 2006.

For the reasons discussed in the Report and Recommendations and in this Order, the court concludes that neither Petitioner's first, nor second, set of Objections are supported by law, and the court denies Blalock's Petition for a Writ of Habeas Corpus.

## I. OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

The majority of Petitioner's objections raise no significant new case law or legal argument to call into question the Magistrate Judge's rulings.  The court also notes that much of Petitioner's brief focuses on discussions of Ohio state law cases.  As the Magistrate Judge correctly noted, federal habeas relief does not lie for errors in state law; rather, there must be a violation or misapplication of clearly-established federal law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).  Thus, the court adopts as its own the Magistrate Judge's R&R on the merits of Petitioner's second, fourth, fifth, sixth, and seventh claims.

For the reasons stated in the Magistrate Judge's R&Rs, as well as the reasons stated below, the court likewise adopts as its own the Magistrate Judge's R&R on the merits of Petitioner's first, third, eighth, and ninth claims.

### A. Claim One: Indictment Not Obtained on Probable Cause

In his Objections, Petitioner contends the Magistrate Judge mischaracterized his claim and solely addressed whether Petitioner was entitled to receive the grand jury transcript from his indictment.  Petitioner now argues there was prosecutorial misconduct, and the prosecutor

- 3 -

manipulated the grand jury into indicting Petitioner without probable cause. According to Petitioner, the prosecutor indicted four co-defendants, without having probable cause that any one of them specifically committed the murder. Petitioner cites cases in which an indictment was overturned due to racial imbalance on the grand jury or selective enforcement on the part of the jury. *See, e.g., Vasquez v. Hilliary*, 474 U.S. 254, 264 (1996). However, there is no such allegation in this case. The sole argument here is that Petitioner was indicted without probable cause. Petitioner does not acknowledge precedent holding that prosecutorial misconduct before a grand jury rarely affects the ultimate trial:

> Incidents before the grand jury do not affect the fairness of the trial. Therefore, this circuit applies a strict standard for dismissal of an indictment because of alleged prosecutorial misconduct before the grand jury. In order to prevail on their claim, defendants must demonstrate that "prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in the district." *United States v. Azad,* 809 F.2d 291, 294 (6th Cir. 1986), cert. denied, *Bigley v. United States*, 481 U.S. 1004 (1987).

*United States v. Collins,* 1991 U.S. App. LEXIS 3575, *15-16 (6th Cir. 1991). Petitioner has not put forth any evidence or argument to suggest such a long-standing problem. Moreover, Petitioner has cited no case law in which a district court, post-conviction, overturned an indictment for lack of probable cause and granted habeas relief. For the reasons stated in the Magistrate Judge's R&R, and because Petitioner has not established a violation of clearly-established federal law on this point, Petitioner's claim as to this point is denied.

### B. Claim Three: Denial of Right to Present Defense

In this claim, Petitioner contends that the trial court erred by refusing to permit him to offer evidence that Arketa Willis, the key witness against him, had previously admitted to the murder with which he was charged. One of Petitioner's co-defendants, Ernest McCauley, made a statement to

police that Willis told him she had committed the murder. McCauley was unavailable to testify at trial based on his Fifth Amendment right not to incriminate himself. The court refused to permit the evidence, finding that it was double hearsay. The Magistrate Judge, noting that the district court could grant habeas relief for errors in state evidentiary rulings only where the errors violated constitutional due process, found no such due process violation. For the reasons stated below, the court agrees.

Petitioner asserts that *Chambers v. Mississippi*, 410 U.S. 284 (1973), supports his right to the admission of McCauley's statement in his defense. In *Chambers*, a third party admitted to committing the crime for which the defendant was charged, and then recanted his admission on the witness stand. *Id.* at 287–88. The defendant sought to call several other people to whom the third party had admitted he committed the crime, but the Mississippi state courts barred their testimony under the hearsay rule. *Id.* at 292-93. The Supreme Court reversed, finding that the hearsay statements in question "bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest." *Id.* at 302. In particular, the court noted the following facts:

> First, each of McDonald's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the case -- McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each. Third, whatever may be the parameters of the penal-interest rationale, each confession here was in a very real sense self-incriminatory and unquestionably against interest.

410 US at 300-01.  There are two critical distinctions between *Chambers* and the instant case.  First, in *Chambers*, the witnesses to whom McDonald had confessed were available to testify.  This eliminated one layer of hearsay.  In this case, McCauley was not available to testify, and thus the police statement contained two levels of hearsay - Willis' out-of-court statement to McCauley, and McCauley's out-of-court statement to the police.  Additionally, the "persuasive assurances of trustworthiness" in *Chambers* are not present in this case.  While Willis' statement was self-incriminating, McCauley was a co-defendant.  As such, his statement implicating Willis was exculpatory and in his own self-interest.  Thus, it does not fall within the *Chambers* hearsay exception.

Other courts have explicitly declined to apply *Chambers* to similar factual situations involving double hearsay.  In *Grochulski v. Henderson*, 637 F.2d 50 (2d Cir. 1980), a criminal defendant challenged his conviction on the grounds that he was not permitted to put on a defense and was denied a fair trial.  At trial, the defendant sought to introduce a third party's out-of-court statement to the police, in which the third party reported that another person confessed to the crime for which the defendant was charged.  *Id.* at 53.  The third party exercised his rights under the Fifth Amendment and was thus unavailable to testify at trial.  *Id.* at 54.  The appellate court upheld the trial court's exclusion under the hearsay rules, noting that the evidence did not bear indicia of reliability, as in *Chambers*, since the third party was a police informant who had reason to lie about the confession.  *Id.* at 55.  Likewise in the instant case, McCauley's statement does not bear indicia of reliability.  The state court's decision to bar the statement was not contrary to, or an unreasonable application of, well-established federal law.  Accordingly, for these reasons and the reasons stated in the Magistrate Judge's R&R, this claim is dismissed.

### C. Claim Eight: Inconsistent Theories

Petitioner argues that he was denied due process of law because at his trial, the prosecutor argued that he shot Rose, and at McCauley's trial, the prosecutor argued that McCauley shot Rose. The Magistrate Judge noted questions of fact as to whether the two trial arguments actually were inconsistent, and also found that Blalock had not shown well-established federal law suggesting such an argument would be a due process violation. The court agrees. Petitioner cites *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) for the proposition that judicial estoppel doctrine prevents parties from changing their positions "according to the exigencies of the moment." However, *New Hampshire* was a civil case, and does not establish judicial estoppel in criminal proceedings. The other case Petitioner raises in his Objections, *United States v. McCaskey*, 9 F.3d 368, 378-79 (5th Cir. 1992), explicitly declines to address whether judicial estoppel applies to the government in criminal contexts. Thus, Petitioner has cited no clearly-established federal law which suggests the prosecutor's allegedly conflicting arguments, or the state court's decision on the issue, violated his due process rights. Accordingly, for these reasons and the reasons stated in the Magistrate Judge's R&R, this claim is dismissed.

### D. Claim Nine: Denial of New Trial

Petitioner argues that the state appellate court denied him due process when it refused to order a new trial on the basis of newly-discovered evidence of actual innocence. This evidence, which differs from the evidence recently added by Petitioner's Motion to Expand the Record, consists of statements by co-defendants McCauley and Dion Johnson to a probation officer in pre-sentencing reports. In the statements, McCauley indicates that Willis admitted the murder to him,

- 7 -

and Johnson contends he received a phone call from McCauley telling him that Willis had shot someone.

The state appellate court found that the "newly discovered evidence" Petitioner cited was not actually new, because it was consistent with prior statements from the same witnesses which Petitioner possessed before trial. The Magistrate Judge found Petitioner did not prove that "the trial court's failure to grant him a new trial is contrary to or involves an unreasonable application of federal law as found in the holdings of the Supreme Court." (2/15/06 R&R at 43, ECF No. 40.)

In his objections, Petitioner contends that the appellate court and the magistrate judge improperly analyzed this issue. He argues that there *is* newly-discovered evidence, because the new witness statements were from Petitioner's co-defendants, who had been indicted but not tried at the time of Petitioner's trial, and were thus unavailable to testify under the Fifth Amendment. Petitioner cites *State v. Condon,* 157 Ohio App. 3d 26 (Ohio Ct. App. 2004), for the proposition that newly-discovered evidence from a witness unavailable at trial due to the Fifth Amendment is newly-discovered evidence for purposes of a grant of a new trial. However, Petitioner does not suggest that this is a constitutional right, and offers no federal case law to suggest that unavailability of witnesses at trial renders information the defendant knew at trial, but could not put into the record, newly-discovered evidence. Even if the state court misapplied Ohio law, as Petitioner suggests in his objections, federal habeas relief does not lie for errors in state law. *E.g., Phillips v. Million,* 374 F.3d 395, 397 (6th Cir. 2004).

Petitioner simply offers no federal law suggesting that under these factual circumstances, it was constitutional error for the state court to deny a new trial. To the contrary, some courts have found that "a claim that a habeas petitioner is entitled to relief based upon the failure of a state trial

judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding." *Monroe v. Smith,* 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001). Moreover, even on direct appeal, motions for a new trial based upon newly discovered evidence are "are disfavored and should be granted with caution." *United States v. Turns,* 198 F.3d 584, 586 (6th Cir. 2000). Accordingly, for these reasons and the reasons stated in the Magistrate Judge's R&R, this claim is dismissed.

## II. FREESTANDING ACTUAL INNOCENCE CLAIM

As the Magistrate Judge correctly found, a showing of actual innocence, absent an underlying constitutional violation, is insufficient to warrant habeas relief. The cases Petitioner cites in his objections do not support a holding to the contrary. *See Schlup v. Delo*, 513 U.S. 298 (1995) (holding that actual innocence evidence enabled lower court to examine petitioner's previously barred constitutional claims, including ineffective assistance of counsel, on their merits); *Giglio v. United States*, 405 U.S. 150, 154-55 (1971) (granting new trial based on discovery that government withheld exculpatory evidence); *Mooney v. Holohan,* 294 U.S. 103, 112 (1935) (finding that deliberate use of knowingly perjured testimony violates due process, but denying leave to file habeas petition).

The court notes, however, that the Supreme Court did not completely foreclose the idea of a freestanding actual innocence claim in the context of a death penalty case in *Herrera v. Collins*, 506 U.S. 390 (1993). In *Herrera*, the petitioner argued that because he was innocent, his execution would offend the Eighth and Fourteenth Amendments of the Constitution. *Id.* at 398. The Court noted that "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim

considered on the merits." *Id.* at 404. At the close of the opinion, however, the Court reasoned, *arguendo*, that the execution of a truly innocent person would violate the Constitution, but opined that the threshold showing for such a case "would necessarily be extraordinarily high." *Id.* at 417. Finding that the petitioner did not meet this abstract standard, the *Herrera* Court denied his actual innocence claim.

While several circuit courts have interpreted *Herrera* to permit a freestanding actual innocence claim, none of those circuits have permitted a freestanding actual innocence claim outside of the death penalty context. *E.g., Carriger v. Stewart,* 132 F.3d 463 (9th Cir. 1997), *cert. denied*, 523 U.S. 1133 (1998). Moreover, while the Sixth Circuit has not issued a published opinion explicitly rejecting freestanding actual innocence claims, several unpublished cases have rejected such claims. *Davis v. Burt*, 2004 WL 771224, at *8 (6th Cir. Apr. 9, 2004); *Marine v. Mack,* 2004 WL 237430, at *1 (6th Cir. Feb. 6, 2004); *Campbell v. Berghuis,* 2003 WL 22435657, at *2 (6th Cir. Oct. 23, 2003). Petitioner has cited no case law from any court suggesting that a freestanding actual innocence claim in a non-capital case is grounds for habeas relief, absent an underlying constitutional violation. Thus, the court need not consider whether Petitioner's new evidence of actual innocence, the transcribed jail telephone conversations, meet the hypothetical *Herrera* standard.

### III. CONCLUSION

Accordingly, after careful review of both R&Rs, the Objections, and all other relevant materials in the file, the court finds that the Magistrate Judge's conclusion that Blalock's claims do not merit habeas relief are fully supported by the record and controlling case law. The court is cognizant of Petitioner's new evidence of actual innocence, and agrees with the Magistrate Judge

that "these accounts indicate that the state of Ohio may have convicted the wrong person when it found Blalock guilty of the murder of Rose." (2/15/06 R&R at 44, ECF No. 40.) However, while this evidence is sufficient as a matter of law to excuse Petitioner's procedural default, Petitioner has simply not shown that his conviction was contrary to, or involved an unreasonable application of federal law. Given the facts and posture of this case, this court has no authority under federal habeas corpus law to order a new trial.

The court adopts as its own the Magistrate Judge's Report and Recommendations (ECF Nos. 25, 40)[2], supplemented by the reasoning in this Order. The court dismisses Blalock's petition for a writ of habeas corpus. Petitioner is granted a certificate of appealability on his first, third, eighth, and ninth claims. However, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from the decision on claims two, four, five, six, and seven could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability for those claims. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

June 29, 2006

---

[2] The court does not adopt the Magistrate Judge's recommendations, in the original R&R, that several of Petitioner's claims are procedurally defaulted. The court does adopt the Magistrate Judge's subsequent recommendations, in the second R&R, that Petitioner's claim of actual innocence is sufficient to excuse the procedural default, and adopts all discussions of Petitioner's claims on their merits.