**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
CASE NO. 1:04CV2156
(JUDGE SOLOMON OLIVER, JR.)**

| | | |
|---|---|---|
| **MARCUS BLALOCK** | : | |
| Petitioner, | : | **MOTION FOR A NEW TRIAL OR TO ALTER AND AMEND JUDGMENT** |
| vs. | : | |
| **JULIUS WILSON, WARDEN** | : | |
| Respondent. | : | |

\* \* \*

Now comes petitioner, Marcus Blalock, pursuant to Rules 52 and 59 of the Federal Rules of Civil Procedure and moves that the court alter and amend its judgment dismissing the petition for writ of habeas corpus filed by Marcus Blalock.

The court, in its order filed June 30, 2006, overruled petitioner's objections and dismissed the petition. The court acknowledged that there were probably violations of petitioner's fundamental right to a fair trial but ruled that no specific constitutional violation was found. Accordingly, even though the court agreed that the state may have convicted the wrong person, the court declined to grant relief.

Petitioner believes that these conclusions are flawed and not in accordance with constitutional precedent. Therefore the court should alter and amend its judgment and grant habeas corpus relief to petitioner.

# I
# DENIAL OF PETITIONER'S RIGHT TO PRESENT A DEFENSE.

The court, in considering this claim and adopting the Magistrate's conclusion, distinguished **<u>Chambers v. Mississippi</u>**, 410 U.S. 284 (1973), where the Supreme Court ruled that the failure to allow evidence that other persons had admitted to committing the offense deprived a defendant of his constitutional rights to present a defense.

In the present case, Ernest McCauley was a jointly indicted defendant. However, McCauley had not been brought to trial. Consequently McCauley had a Fifth Amendment right to decline to testify.

Arketa Willis was the sole witness implicating petitioner in the death of Howard Rose. Defense counsel made a request that they be permitted to offer to the jury a statement attributable to Arketa Willis where she admitted that she was responsible for the death of Howard Rose. Counsel had in their possession a statement from Ernest McCauley to the Maple Heights police. McCauley stated that Willis told him that she had shot Rose. The court ruled that this evidence would not be admitted. (Tr.824). This was admissible because, when Willis was interviewed on April 6, 2001, she gave conflicting statements. Trooper Jay D. McKee accused Willis of admitting to killing Rose. (Tr.1029). Based on that question she denied that she admitted killing Rose. (Tr.1030-31). However she did not deny killing Rose because she was not asked that question. (Tr.1031).

Consequently, Willis' admission to McCauley, an alleged co-conspirator, would be significant. McCauley had not been brought to trial. Thus he could not be compelled to testify. However her admission to McCauley would allow petitioner to present a defense.

It must be remembered that Arketa Willis was also indicted as a co-defendant. Thus her admission that she had committed the homicide bore a significant greater indicia of trustworthiness than a third party who has not been charged or otherwise identified as involved in the murder.

On three different occasions when Arketa Willis was interviewed by the police, she lied to the police. After being indicted and charged with aggravated murder with a death penalty specification she was given a sweetheart deal to plea to obstruction of justice and tampering with evidence. Only after given this deal did she implicate petitioner in Howard Rose's death. However, her testimony cannot be given any weight.

Arketa Willis was a self-admitted liar and prevaricator. Willis lied to the police on March 23, 2001 when they came to her house. (Tr.1296. On April 6, 2001 she lied to the police about going to her aunt's house to call the police. (Tr.1297). Her voice on the 911 tape shows that she did not ask her aunt to call the police. (Tr.1295,1298). She even continued to lie in the presence of her attorneys when interviewed by the police on June 6, 2001. (Tr.1300,1302). She lied to the police about spending Saturday and Sunday nights at the motel with Omar. (Tr.1311). Thus, **"everything you told the police on April 6th was a lie. ..."** (Tr.1311). Her claim she received a phone call from petitioner while riding was a lie. (Tr.1314).

Willis admitted there were **"a lot of lies"** in her April 9, 2001 statement. (Tr.1315). Her testimony consisted of a proliferation of lies. This cannot be considered positive evidence to establish guilt beyond a reasonable doubt.

Willis testified she took a bath at 7:30 p.m. while Rose laid on the bed. (Tr.1178-79). The tub was half filled with water. After bathing the water remained in the tub. (Tr.1180). Ptrl. Barfield entered Willis' home around midnight on March 23, 2001 and found in the bathtub, warm murky water and soap residue. There were candles lit around it. (Tr.731,743).

Willis testified that a mattress soaked with blood was put up against the back of the house. (Tr.1277). Barfield entered the home through a back window. He saw no mattress up against the house. (Tr.742). Det. Erhbar also saw no mattress outside the house. (Tr.1440). Barfield was contradicted by James Evans who lived next door, who saw a mattress or box spring outside. (Tr.603,618).

However, without Arketa Willis there was absolutely no evidence in any manner or form that connected petitioner to Howard Rose's death. There was no independent evidence or corroborative evidence to place petitioner at Arketa Willis' home, moving a body out of her home after Rose's death, and transporting Rose to Pennsylvania where Rose's vehicle was incinerated.

While Willis at one point claimed that petitioner told her he had to do it.(Tr.1202 ). Arketa Willis, when asked about her statement on April 6, 2001 in which she said petitioner said **"I had to do him"** was **"all not true."** (Tr.1387).

A basic constitutional right of a defendant is the right to present a defense. Thus, **"[T]he Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.' _Crane v. Kentucky_**, 476 U.S. 683, 690 (1986) (quoting **_California v. Trombetta_**, 487 U.S. 479, 484 (1984)). This right was part of the minimum constitutional rights essential to a fair trial. To secure a fair trial defendant is entitled, **"as a minimum, a right to examine the witnesses against him, to offer testimony, to be represented by counsel."** _In re Oliver_, 333 U.S. 257, 273 (1948).

More recently, in **_Chia v. Cambra_**, 360 F.3d 997 (9th Cir.2004), the defendant in a state criminal trial had attempted to introduce a statement given by a co-defendant to law enforcement officers which stated the responsible individual, not the defendant, had confessed not only was there a plan to rob but that the other person had planned to murder the officers. Moreover, in the statement the witness had stated that the defendant had told him not to go through with the plot. This evidence was excluded at the trial and

4

defendant was found guilty. A writ of habeas corpus was granted. The statements were not only reliable, they were material and would have substantially bolstered the claims of innocence.

## II
## INCONSISTENT THEORIES

The court ruled that the case of **New Hampshire v. Maine**, 532 U.S. 742, 749-50 (2001), a civil case did not apply the doctrine of judicial estoppel to criminal proceedings.

However, in **Smith v. Groose**, 205 F.3d 1045 (8th Cir.2000), the court considered the state presenting inconsistent theories at different trials as constituting a denial of due process of law. The court noted that at least two courts had recognized that inconsistent prosecutorial theories in similar circumstances violated due process of law. **Thompson v. Calderon**, 20 F.3d 1045, 158-59 (9th Cir.1997); **Drake v. Francis**, 727 F.2d 990, 994 (11th Cir. 1984). The court, in **Smith**, ruled that there was a due process violation where the state presented inconsistent theories involving the same offense at separate trials of different defendants. The court specifically ruled that the use of factually contradictory theories violated due process of law. In so holding the court stated that:

> Our holding in this case is a decision dictated by precedent, for we do not break new ground nor impose a new obligation on the government. Neither the due process requirement that the government prosecute fairly in a search for truth nor the prosecutor's role in such a prosecution constitutes a new rule of law. The prosecutor **"is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer."** **Berger**, 295 U.S. at 88. **"It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."** See **Id.** The prosecutor's role is to protect those innocent of crimes and to uphold the constitutional rights of the accused - - seek justice and fairness, not solely convictions. See **id. Bagley**, 472 U.S. at 667. Those lawyers who act on behalf of the government in criminal cases, **"serve truth and justice first."** **Thompson**, 120 F.3d at 1058 (discussing due process case law, ethics rules, and the prosecutor's role). State courts, presented with factual contradiction in successive prosecutions as occurred in this case, would have been compelled to hold as we have.

5

Even if our holding were to constitute a new rule of law, however, it would fall within the narrow *Teague* exception for cases that establish rules necessary to fundamental standards of fairness and accuracy in the criminal law. See *Teague* 489 U.S. at 312; *Parks*, 494 U.S. at 495; see also *Butler v. McKellar*, 494 U.S. 407, 416 (1990) (holding *Teague* fundamental fairness exception inapplicable to a rule that does not promote the accuracy of convictions). Our holding that the Due Process Clause's guarantee of fundamental fairness prohibits prosecutors from putting forth inherently factually contradictory theories to convict multiple defendants of the same murder embodies the elements of primacy and centrality that indicates a **"watershed ruled of criminal procedure."** *Parks* 494 U.S. at 495. **"That requirement [of due process in a criminal trial], in safeguarding the liberty of the citizen against deprivation through the action of the state, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions."** *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). 202 F.3d at ____.

### III
### ACTUAL INNOCENCE CLAIMS

The court, while acknowledging that the Magistrate had concluded that the state probably charged and convicted an innocent person nevertheless declines to grant relief. The court ruled that the free standing actual innocence claims have only been applied in capital cases. However, petitioner's case is a functional equivalent of a capital case because he had been sentenced to life imprisonment. Unless granted relief he will serve the rest of his life in prison and die in prison. Petitioner's claim of actual innocence only came to light after petitioner had exhausted his state remedies and had the present case pending in this court. That evidence was not known and could not be secured prior to the date it was secured as evidenced by the date of tape recordings submitted to the court.

By allowing the use of false testimony to stand uncorrected, the due process rights to a fair trial of defendant have been violated. *Giglio v. United States*, 405 U.S. 150, 154-55 (1971); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935); *Brown v. Wainwright*, 785 F.2d 1457 (11th Cir. 1986).

It has been stated that **"the deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice."** *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) .

Petitioner therefore moves that the court reconsider its prior decision. In view of the substantial constitutional violations and the fact that petitioner, a probable innocent person, will be required to serve the rest of his days in prison should this court fail to grant habeas corpus relief.

*s/paul mancino, jr.*
PAUL MANCINO, JR. (0015576)
Attorney for Petitioner
75 Public Square, #1016
Cleveland, Ohio 44113-2098
(216) 621-1742
(216) 621-8465 (Fax)
E-mail pmj05@sbcglobal.net

## SERVICE

A copy of the foregoing ***Motion for a New Trial and Alter and Amend Judgment*** has been electronically file on this **7th** day of **July, 2006**, to all parties by operation of the Court's Electronic Filing System.

*s/paul mancino, jr*
PAUL MANCINO, JR. (0015576)
Attorney for Petitioner
E-mail pmj05@sbcglobal.net

thiMBlalock.NewTrl06